IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 19, 2022 Session

## MARY CAUSBY JACKSON, AS ADMINISTRATRIX OF THE ESTATE OF SAMARA ELIZABETH JACKSON v. LENITA H. THIBAULT, M.D., ET AL.

**Appeal from the Circuit Court for Sullivan County**
**No. C41505 (M)     John S. McLellan, III, Judge**

_____

**No. E2021-00988-COA-R3-CV**

_____

Plaintiff appeals the trial court's decision to exclude her proffered expert for failing to comply with the locality rule expressed in ***Shipley v. Williams***, 350 S.W.3d 527 (Tenn. 2011). Plaintiff also appeals the trial court's decision to grant the defendants' motion for summary judgment. Discerning no abuse of discretion, we affirm the decision of the trial court to exclude the expert. Additionally, we affirm the grant of summary judgment to defendants.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Mark W. McFall, Johnson City, Tennessee, for the appellant, Mary Causby Jackson.

Russell W. Adkins, Kingsport, Tennessee, for the appellees, Lenita H. Thibault, and Wellmont Medical Associates, Inc.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2014, Samara Elizabeth Jackson was admitted at the Holston Valley Medical Center ("the facility") in Kingsport, Tennessee for a total laparoscopic hysterectomy. Ultimately, however, Defendant/Appellee Lenita H. Thibault, M.D. (a

Kingsport obstetrician-gynecologist) performed a more invasive procedure on Ms. Jackson, allegedly due to complications discovered during the surgery. The day following the surgery, Ms. Jackson began experiencing significant pain. Eventually, Ms. Jackson's pain and other symptoms began to worsen, causing her to be moved to the intensive care unit of the facility on October 31, 2014. On November 1, 2014, Ms. Jackson was diagnosed with septic shock; the diagnosing doctor suspected that the cause of the septic shock was intra-abdominal disease. That same evening, Ms. Jackson died.

Plaintiff/Appellant Mary Causby Jackson ("Plaintiff") was later named the administratrix of Ms. Jackson's estate. She filed the instant complaint on May 2, 2016,[1] in Sullivan County Circuit Court ("the trial court") against a number of medical providers, including Dr. Thibault, and her employer, Defendant/Appellee Wellmont Medical Associates (together, "Defendants").[2] Therein, Plaintiff alleged that Dr. Thibault's negligence was the proximate cause of Ms. Jackson's death.

An agreed scheduling order required that Plaintiff disclose experts by June 3, 2019. On June 5, 2019, Plaintiff disclosed John F. Steege, M.D., a doctor practicing obstetrics and gynecology in Chapel Hill, North Carolina. Included with the disclosure was an April 8, 2015 letter authored by Dr. Steege attached to the disclosure stating that Dr. Thibault "departed from the standard of acceptable professional practice applicable to the medical profession and the specialty of obstetrics and gynecology" in a number of respects, both pre- and post-operatively, and that these departures proximately caused Ms. Jackson's death.[3]

Defendants deposed Dr. Steege on July 11, 2019. On November 19, 2019, Defendants filed a motion to exclude Dr. Steege as an expert witness on the basis that he was not competent under Tennessee Code Annotated section 26-26-115(b) and that his testimony would therefore not assist the trier of fact as required by Rule 702 of the Tennessee Rules of Civil Procedure. Plaintiff responded in opposition to Defendants' motion, arguing that Dr. Steege was competent to testify and that his testimony was admissible. The trial court held a hearing on Defendants' motion on December 12, 2019, and entered an order granting the motion on December 19, 2019. Therein, the trial court ruled that Dr. Steege did not meet the locality rule outlined in ***Shipley v. Williams***, 350 S.W.3d 527 (Tenn. 2011). Although the time for disclosing experts had passed, the trial court granted Plaintiff leave to identify another expert and continued the trial.[4]

---

[1] A prior complaint had been nonsuited; the instant complaint was filed less than a year later pursuant to Tenn. Code Ann. § 28-1-105.

[2] Other defendants were also named in the complaint but are no longer parties to this case.

[3] Plaintiff also disclosed another expert, a doctor from West Virginia. The parties do not discuss this expert in their later filings or in this appeal.

[4] The trial court's December 19 order did not provide a specific date for the disclosure of a substitute expert.

Several months passed. On June 8, 2020, the parties entered into another agreed order providing that Plaintiff would provide substitute expert disclosures by August 31, 2020. On October 9, 2020, Defendants filed a motion to dismiss, citing Plaintiff's failure to disclose an expert. Plaintiff responded with a motion for an enlargement of time to obtain an expert. Therein, Plaintiff noted that she had consulted with a substitute expert, but that the expert's own health problems prevented his participation in the case. On November 23, 2020, the trial court granted Plaintiff's motion for an enlargement of time; the new deadline provided that Plaintiff would make expert disclosures by January 15, 2021. As a result of the enlargement of time, the trial court denied Defendants' motion to dismiss.

A few days after the expiration of the new deadline, on January 20, 2021, Plaintiff filed a second motion for an enlargement of time, citing issues related to the COVID-19 pandemic. Defendants filed a response in opposition to a further enlargement of time. Additionally, on April 9, 2021, Defendants filed a motion for summary judgment and statement of undisputed material facts. In support of that motion, Defendants attached the deposition testimony of their expert, Thomas Stovall, M.D., who opined that Dr. Thibault complied with the recognized standard of care applicable to the community at all times. Defendants argued that Dr. Stovall's testimony therefore negated an essential element of Plaintiff's claim.

Plaintiff filed a response in opposition to Defendants' motion for summary judgment in which she admitted that Dr. Stovall was qualified but denied that his testimony negated an essential element of her claim. Plaintiff also responded to Defendants' statement of undisputed material facts by admitting every fact contained therein, including that Dr. Stovall testified that he was familiar with the recognized standard of care in Kingsport at the time of the care and that Dr. Thibault met that standard of care at all times in her treatment of Ms. Jackson. Plaintiff submitted no expert proof in response to Defendants' motion for summary judgment.

On May 11, 2021, the trial court entered an order granting Plaintiff's second motion for an enlargement of time to disclose an expert. Under this order, Plaintiff was required to disclose a substitute expert by June 7, 2021. The trial court noted, however, that no further enlargements of time would be entertained. The trial court further ruled that Defendants' motion for summary judgment would be stayed pending the disclosure of Plaintiff's expert, but that "[i]n the event Plaintiff failed to disclose her medical expert within the time set forth in this [o]rder, the [c]ourt will address Defendants' [m]otion for [s]ummary [j]udgment."

The June 7, 2021 deadline passed with no additional expert disclosures by Plaintiff. The hearing on Defendants' motion for summary judgment was therefore held on July 30, 2021. Ultimately, the trial court granted Defendant's motion for summary judgment by order of August 3, 2021, concluding that the testimony of Defendants' expert negated an essential element of Plaintiff's claim and that Plaintiff submitted nothing to "dispute that

- 3 -

proof." From these orders, Plaintiff now appeals.

## II. ISSUES PRESENTED

Plaintiff raises the following issues for review:

1. Whether the trial court erred and abused its discretion in excluding Plaintiff's standard of care expert as lacking the modicum of familiarity a medical expert must demonstrate that he has with the standard of care in the medical community in which the Defendant practiced, or a similar community, at the time of the alleged injury or wrongful action.

2. Whether the trial court erred in granting summary judgment to the Defendants based on Plaintiff's inability to prove an essential element of her claim because the trial court had excluded her medical expert witness.

## III. STANDARD OF REVIEW

This case involves two interrelated issues: the exclusion of Plaintiff's causation expert and the grant of summary judgment following the exclusion. A trial court's decision to exclude an expert is reviewed for an abuse of discretion. *Boyd v. BNSF Ry. Co.*, 596 S.W.3d 712, 724 (Tenn. Ct. App. 2018). "Generally, questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion. We may not overturn the trial court's ruling admitting or excluding expert testimony unless the trial court abused its discretion." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005) (internal citations omitted). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Fisher v. Hargett*, 604 S.W.3d 381, 395 (Tenn. 2020) (quoting *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305–06 (Tenn. 2020)).

In contrast, the grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* As our supreme court has explained,

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary*

*judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Id.* at 264.

## IV. ANALYSIS

This case is governed by the Tennessee Health Care Liability Act ("THCLA"). Under the THCLA, the plaintiff has the burden to prove "by evidence as provided by subsection (b)" the following elements:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). Section 29-26-115(b) goes on to state that

No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

Tenn. Code Ann. § 29-26-115(b) (noting that the trial court may waive this requirement "when it determines that the appropriate witnesses otherwise would not be available"). Based on this statute, there is no dispute that Plaintiff was required to establish duty, breach of duty, and causation through the testimony of a competent and admissible expert meeting the requirements of section 29-26-115(b).

Competency under the above statute, however, is not the only requirement for admissibility. Instead, the expert must still meet the admissibility requirements of Rules

702[5] and 703[6] of the Tennessee Rules of Evidence. Thus, "[i]n its role as a gatekeeper, the trial court is to determine (1) whether the witness meets the competency requirements of Tennessee Code Annotated section 29-16-115(b) and, (2) whether the witness' testimony meets the admissibility requirements of Rules 702 and 703." **Shipley v. Williams**, 350 S.W.3d 527, 551 (Tenn. 2011).

In evaluating an expert, the trial court must also consider the requirements of the locality rule. *Id.* Under the locality rule,

> [A] medical expert must demonstrate a modicum of familiarity with the medical community in which the defendant practices or a similar community. Generally, an expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has discussed with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as relevant and probative to "substantially assist the trier of fact to understand the evidence or to determine a fact in issue" under Tennessee Rule of Evidence 702 in a medical malpractice case and to demonstrate that the facts on which the proffered expert relies are trustworthy pursuant to Tennessee Rule of Evidence 703.

*Id.* at 552. Firsthand knowledge of the community is not required to meet the requirements of the locality rule; instead,

> a proffered expert may educate himself or herself on the characteristics of a medical community in order to provide competent testimony in a variety of ways, including but not limited to reading reference materials on pertinent

---

[5] Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."

[6] Rule 703 provides as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

statistical information such as community and/or hospital size and the number and type of medical facilities in the area, conversing with other medical providers in the pertinent community or a neighboring or similar one, visiting the community or hospital where the defendant practices, or other means.

*Id.* at 552–53.

Still, this somewhat relaxed standard for establishing familiarity does not mean that an expert need only testify as to a national standard of care. *Id.* at 553 ("[I]n this case we do not adopt a national standard of care in medical malpractice cases."). Rather, Tennessee allows testimony of a national or uniform standard of care only once the expert has demonstrated his or her familiarity with the locality:

[E]xpert medical testimony regarding a broader regional standard or a national standard should not be barred, but should be considered as an element of the expert witness' knowledge of the standard of care in the same or similar community. . . .

Only after a medical expert witness has sufficiently established his or her familiarity with the standard of care in the same or similar community as the defendant, may the witness testify that there is a national standard of medical care to which members of his or her profession and/or specialty must adhere. This testimony, coupled with the expert's explanation of why the national standard applies under the circumstances, is permissible and pertinent to support the expert's opinion on the standard of care. The mere mention of a national standard of care should not disqualify an expert from testifying. However, an expert may not rely solely on a bare assertion of the existence of an applicable national standard of care in order for his or her proffered testimony to be admissible under Rules of Evidence 702 and 703.

*Id.* at 553–54.

Keeping these principles in mind, we turn to the expert testimony at issue in this case to determine if the trial court properly excluded it under Rules 702 and 703. *Cf.* ***Payne v. CSX Transp., Inc.***, 467 S.W.3d 413, 454 (Tenn. 2015) ("[A] trial court abuses its discretion when it . . . excludes testimony that meets the requirements of Rule[s] 702 and 703." (quoting ***Shipley***, 350 S.W.3d at 552)). In order to meet her burden under section 29-26-115(a), Plaintiff offered the testimony of Dr. Steege. Defendants do not dispute that Dr. Steege was competent under section 29-26-115(b); instead, their motion to exclude argued that Dr. Steege's testimony was not admissible under Rules 702 and 703 because Dr. Steege did not demonstrate the modicum of familiarity with Kingsport required to meet the requirements of the locality rule. The trial court agreed with Defendants and ruled that Dr. Steege's testimony was inadmissible.

On appeal, Plaintiff asserts that this decision was an abuse of discretion by the trial court because Dr. Steege's deposition testimony demonstrated that he indeed had the necessary familiarity with Kingsport and that his reference to a national standard of care was not in error. Of course, Defendants disagree. In order to resolve this dispute, we turn to the relevant portions of Dr. Steege's deposition testimony, taken on July 11, 2019.

First, Dr. Steege was asked about the recognized standard of care applicable to the care at issue in this case:

Q. What I want to ask you is what is your understanding of that term, "the recognized standard of acceptable professional practice"? What does that mean?
A. Well, that seems to be something of a moving target these days. The old-fashioned definition as we all know is is it similar to . . . what the average practitioner in that community would provide? And more recently, I think the focus has been more on some sort of national level of appropriate standard of care, which seems much more appropriate to me. So when I think "standard of care," I think what -- our national sense of [] what's reasonable and well informed practice.

* * *

Q. So when you reviewed this case, you were talking about a national standard of care for these doctors?
A. You know, ideally, they should both be the same. I don't know specifically if there's a separate definition of local standard of care in Kingsport. You know, that's not in a book anywhere.
Q. So as we sit here, you were -- you were talking about a national standard in talking about Drs. Thibault and Stevens?
A. I was talking about what I would expect any reasonably well-trained gynecologist to be able to do and how they should think. And you can call that "standard of care" if you want, but . . . that's the way I would frame it.

Dr. Steege was then asked about his familiarity with Kingsport specifically:

Q. . . . Are you familiar with Kingsport at all?
A. Not very. I mean, I've known of its existence. I've seen patients from there. I don't know a lot about it other than it's sort of a medium sized city. I did look up some of the stuff about the particular hospital in which Dr. Thibault was practicing. It's a hospital of about three hundred and twenty-five beds or so, three hundred and fifty beds with multiple specialties.

- 8 -

I thought it interesting to note that in the specialties listed on the web that are -- they rated within that hospital, OB/GYN isn't even listed. So I'm not sure what that means.

Q.    When did you review that information?

A.    Either last night or the night before.

Q.    Did you review that information when you formed your opinions back in 2015?

A.    No.

Q.    So you just reviewed it yesterday for purposes of the deposition?

A.    Right. 'Cause I knew you would ask me about Kingsport.

Q.    Okay. So [] you don't know how that compares with what was going on with that hospital in 2014?

A.    Not specifically, unless they've -- I doubt they've shrunk down [] or grown much in the last six months.

Q.    But you didn't do any investigation of Kingsport when you formed your opinions?

Q.    No.

Q.    And the only thing that you've looked at related to Kingsport has been now to prepare for your deposition?

A.    That's right.

Q.    Not to inform your decision or your opinions at all?

A.    Correct.

Q.    You mentioned Kingsport is a midsized city. What [] your definition of a midsized -- or medium. I guess you said medium sized. . . .

A.    . . . I'm purely guessing. I didn't look up the population of Kingsport. I'm going to guess two hundred and fifty to five hundred thousand. But, you know, I'd be curious to know what it really is. . . .

Q.    It's about fifty thousand.

A.    Fifty thousand. Never mind. Okay.

Q.    Any other investigation you've done regarding the medical community in Kingsport?

A.    No.

Dr. Steege also confirmed that he did not know or speak with any providers in the area and did not know about patient populations for the area.

Later, Dr. Steege was again questioned about the demographics of Kingsport,

Q.    Were you provided with any demographics related to Kingsport?

A.    No. I would comment that fifty thousand is roughly the size of Chapel Hill. A little bit smaller, but not much.

Q.    Well, do you know how the . . . metro area of Chapel Hill compares with Kingsport's area?

- 9 -

A.      It depends on how far out you go for -- to call it "metro," 'cause you have Durham and Raleigh, and if you put them all together, then it's . . . more like six hundred thousand, seven hundred thousand, I would guess. It's growing rapidly. Chapel Hill itself has remained the -- pretty much the small college town.

Q.      But you've got a university center here, correct?

A.      That's right.

Q.      Do you have any idea how the University of North Carolina Medical Center compares with Holston Valley Medical Center?

\* \* \*

A.      I think it's in a totally different league. It's a thousand beds with multiple subspecialties, lots of residency and fellowship training programs, a huge volume of research. So it's a totally different world.

Q.      . . . [I]t's not a real comparison. It's just a different . . . type of facility.

A.      No. I wouldn't -- I would hope we would not act like every small town hospital. We're not supposed to.

Q.      Well, now, and I guess to that end, . . . your facility gets referrals from all over the place?

A.      We do.

Q.      Not just people in Chapel Hill?

A.      Correct.

Q.      Just like we refer people to Nashville or Knoxville . . . you get referrals in from all over North Carolina, I would assume?

A.      We do. And . . . to some degree, surrounding states. We've gotten some from Kingsport, you know, Virginia, South Carolina, some from Georgia.

Q.      And to that end, UNC Chapel Hill would not be an accurate comparison to Holston Valley?

A.      It's different in a lot of ways.

Dr. Steege then testified to the standard of care, which he testified was essentially the same "across the country, no matter what the size of your town or the size of your medical center. The rules don't change about how to define or how to treat it."

Based on this testimony, the trial court excluded the opinions of Dr. Steege. In particular, the trial court found as follows:

Dr. Steege formed his opinions in the present case in 2015. It was not until 2019 that Dr. Steege attempted to familiarize himself with the Kingsport community. He admits that he performed an internet search in order to prepare for his discovery deposition, and not to inform his opinions.

- 10 -

Therefore, he was relying upon 2019 information, whereas the care in this case took place in 201[4]. Even then, he incorrectly identified Kingsport as a community with a population of 250,000 to 500,000. Dr. Steege did not discuss the standard of care with any local medical providers, and he did not visit Kingsport. He further admits that the hospital in which he practices offers a level of care that exceeds that available in Kingsport.

Based on these findings, the trial court concluded that Dr. Steege failed to demonstrate the modicum of familiarity required by *Shipley*. We agree.

First, we note that there can be no dispute that the trial court recognized and applied the correct legal standard—the locality rule as outlined in *Shipley*. *Cf. Fisher*, 604 S.W.3d at 395 (noting that one way a trial court abuses its discretion is in applying an incorrect legal standard). Nor did the trial court reach an illogical or unreasonable decision or one based on a clearly erroneous assessment of the evidence. *Id.* Here, Dr. Steege's unfamiliarity with Kingsport is evident from his own admissions. Certainly, Dr. Steege did testify that he acquainted himself with the hospital at issue, including the number of beds and the specialties listed on its website. As the trial court found, however, Dr. Steege did not indicate that this investigation related to the medical facility's capabilities in 2014 when the alleged injury occurred, but rather in 2019, one day before his scheduled deposition. What Dr. Steege apparently did not investigate, however, was the Kingsport community, as he had no knowledge of the community's demographics beyond incorrect speculation. Moreover, there can be little dispute of Dr. Steege's opinion that the facility in which he practices is significantly "different" than the facility at issue in Kingsport. Indeed, Dr. Steege expressed his "hope" that his facility "would not act like every small town hospital"—in other words, he hopes that his facility, being bigger, would perform better.[7]

These facts distinguish the case-at-bar from the central case cited by Plaintiff, ***Evans ex rel. Evans v. Williams***, No. W2013-02051-COA-R3-CV, 2014 WL 2993843 (Tenn. Ct. App. June 30, 2014). In ***Evans***, the trial court granted a motion to exclude the testimony of the plaintiff's expert on the basis that the expert was not familiar with the standard of care in Gibson County or a similar community. *Id.* at *3. This Court reversed. *Id.* at *7–9.

In doing so, the ***Evans*** panel noted that the expert testified to "exactly the type of information described in *Shipley* as sufficient to establish 'a modicum of familiarity' with the community in which the defendant practices." *Id.* at *8. For example, the expert testified that he was familiar with the demographics of Gibson County, could accurately state the population of the county, the beds of the local hospital, and the number of doctors

---

[7] Thus, it does not appear that Plaintiff even attempts to argue that Dr. Steege's knowledge of his own community is sufficient to establish the familiarity needed to meet the locality rule here. *See Shipley*, 350 S.W.3d at 552 (holding that the expert must demonstrate familiarity with either "the medical community in which the defendant practices *or a similar community*") (emphasis added).

- 11 -

in the specialty at issue at the time the injury occurred. *Id.* at \*7–8. The *Evans* panel held that this was sufficient to meet the requirements of *Shipley*. *Id.* at \*8.

The same is not true, however, of Dr. Steege. For one, Dr. Steege admitted that his knowledge of the population of Kingsport was nothing more than guesswork. Indeed, his speculation as to Kingsport's population was well off the mark.[8] Moreover, while he testified that he was familiar with the medical facility's beds and specialties at the time of his deposition, his testimony gave no indication that he had familiarity with the statistical information for the time of the injury, over four-and-a-half years prior. *See Ray v. S. Tennessee Med. Ctr., LLC*, No. M2012-01227-COA-R3-CV, 2013 WL 3282927, at \*5 (Tenn. Ct. App. June 25, 2013) (affirming the trial court's decision to admit an expert when he was knowledgeable about the facility at issue at the time the injury occurred and had worked in similar types of small emergency rooms).

While the span of less than five years may arguably not be a significant period of time, Dr. Steege's own testimony shows that the information he utilized had either changed or was inaccurate. Specifically, Dr. Steege testified that "OB/GYN isn't even listed" as a current specialty offered by the facility at issue. But Plaintiff undisputedly received gynecological care in 2014 at the facility. So the scant information on which Dr. Steege relied was either inaccurate, incomplete, or outdated. And nothing in Dr. Steege's testimony indicates that he went beyond this cursory internet search of the facility's current statistics to have discussions with knowledgeable medical care providers or visit the facility or community. *Shipley*, 350 S.W.3d at 555–56 (holding that the expert was familiar with the locality based, inter alia, on the fact that the expert had reviewed demographic information about the city at issue and toured one of the community hospitals).

Finally, Dr. Steege did not gain this purported familiarity until well after he first opined that Dr. Thibault breached the standard of care. As a reminder, Dr. Steege admitted in his deposition that the first time he made any attempt to familiarize himself with Kingsport was immediately in advance of his deposition, years after he signed a letter outlining his opinion as to the standard of care at issue. Thus, the opinions he expressed in his expert disclosure—that Dr. Thibault breached the standard of care—could not possibly have been given "[o]nly **after**" he had "sufficiently established his or her familiarity with the standard of care in the same or similar community as the defendant[.]" *Shipley*, 350 S.W.3d at 553 (emphasis added). Indeed, Dr. Steege's letter does not state either that he was familiar with the locality of Kingsport and its standard of care or that Dr. Thibault breached the standard of care in the locality; he simply stated that Dr. Thibault breached the standard of care "applicable to the medical profession and the specialty of obstetrics

---

[8] In her brief, Appellant admits that the population of Kingsport was little over 55,000 even as late as 2020. Although Plaintiff also cites the population of the Kingsport-Bristol combined area as falling within the range set by Dr. Steege, Dr. Steege's testimony was in response to a question solely as to population of Kingsport.

- 12 -

and gynecology." *Cf. **Donald v. Shea***, No. W2010-02317-COA-R3-CV, 2012 WL 504510, at *11 (Tenn. Ct. App. Feb. 16, 2012) (affirming the trial court's decision to allow an expert to testify when his affidavit stated that he was familiar with the standard of care of the locality at issue and provided detailed reasons why he believed that his community was similar to the locality where the defendant worked and that a national standard of care was applicable under the facts of the case). Moreover, Appellant has pointed to nothing in Dr. Steege's testimony to indicate that his review of Kingsport in the days before his deposition caused him to reevaluate his opinion in any manner, even if he ultimately came to the same conclusion.[9] Without an attempt to familiarize himself with the locality before forming his opinions, it is difficult to discern how Dr. Steege could conclude that the local standard is synonymous with the national standard, as required under ***Shipley***.

The case of ***Griffith v. Goryl***, 403 S.W.3d 198 (Tenn. Ct. App. 2012), is instructive on this issue. In ***Griffith***, the plaintiff's expert testified that the defendant doctor breached the standard of care, which the expert defined as what the majority of well-trained physicians practicing that specialty across the country would have done under the circumstances. *Id.* at 204. The trial court excluded the expert's testimony solely on the basis of the expert's reference to what the majority of physicians would do under the circumstances. *Id.*

Ultimately, we concluded that the exclusion of the expert was an abuse of discretion. *Id.* at 210–11. In reaching this result, we cited three pre-***Shipley*** cases in which an expert was excluded. *See id.* at 209–10 (citing ***Land v. Barnes***, No. M2008-00191-COA-R3-CV, 2008 WL 4254155, at *5–6 (Tenn. Ct. App. Sept. 10, 2008); ***Godbee v. Dimick***, 213 S.W.3d 865, 895 (Tenn. Ct. App. 2006); ***Hopper v. Tabor***, No. 03A01-9801-CV-00049, 1998 WL 498211, at *1 (Tenn. Ct. App. Aug. 19, 1998)). In these cases, however, "the proffered expert *admitted* to not knowing the applicable standard of care, but then testified that he or she nonetheless believed the defendant breached the standard of care by failing to conform to the practices of the majority of [practitioners]." *Id.* at 210. In contrast, the plaintiff's expert in ***Griffith*** repeatedly testified that he was knowledgeable about the standard of care where the defendant practiced at the time of the injury and that he had done a thorough investigation into the locality to reach his conclusion. As a result, the expert's "'somewhat inartful' response to a single question related specifically to imaging studies does not undermine the basis for his testimony or render his expert opinion untrustworthy." *Id.*

Dr. Steege's testimony was quite different than that of the expert in ***Griffith***. While that expert "repeatedly testified that he was aware of the standard of care for urologists

---

[9] As a reminder, Dr. Steege agreed in his deposition that his investigation into Kingsport did not "inform [his] decision or [his] opinions **at all**[.]" (Emphasis added).

practicing in Cookeville, Tennessee, from 2004–2006," *id.*, Dr. Steege made no such claim about obstetricians and gynecologists in Kingsport, Tennessee in 2014. Instead, he testified rather vaguely that the national standard and the standard in Kingsport "should both be the same," but admitted that he did not "know specifically if there's a separate definition of local standard of care in Kingsport." Thus, Dr. Steege disclaimed having even minimal knowledge about Kingsport and its particular standards. It was therefore not Dr. Steege's resort to a national standard of care alone that caused the trial court to exclude him, but his failure to consider the locality at issue before imposing such a national standard. As a result, we must conclude that Dr. Steege offered nothing more than "a bare assertion of the existence of an applicable national standard of care." *Shipley*, 350 S.W.3d at 553–54.

Certainly, Dr. Steege did attempt to familiarize himself with some statistical information surrounding the facility in a belated effort to comply with the requirements of *Shipley*. Under the abuse of discretion standard, however, we cannot overturn the trial court's decision unless the trial court applied an incorrect standard, made an illogical or unreasonable decision, or based the decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). We are therefore not permitted to second guess the trial court, as the abuse of discretion standard creates "a decreased likelihood that the decision will be reversed on appeal" so long as the trial court makes a reasonable "choice among" the "acceptable alternatives." *Id.* Under these circumstances, we simply cannot say that the trial court abused its discretion in concluding that Dr. Steege's belated and perfunctory attempt to learn some statistical information about the community was sufficient to establish that he possessed a modicum of familiarity with Kingsport for purposes of the locality rule. As such, we discern no abuse of discretion in the trial court's decision to exclude Dr. Steege's testimony under the locality rule.

Having determined that the trial court did not abuse its discretion in excluding Dr. Steege's testimony, we further conclude that the trial court did not err in granting summary judgment to Defendants. Here, Defendants supported their motion for summary judgment with the testimony of Dr. Stovall that Dr. Thibault complied with the standard of care. This testimony negated an essential element of Plaintiff's health care liability claim. *See* Tenn. Code Ann. § 29-26-115(a). The burden of production therefore shifted to Plaintiff to "'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). And in this particular case, it was Plaintiff's burden to produce expert proof that Dr. Thibault breached the applicable standard of care. *See Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020) ("Generally, the evidence required by section 29-26-115(a) must be proven through the testimony of a qualified expert witness."). Plaintiff simply failed to meet that burden. As such, the trial court did not err in granting Defendants' motion for summary judgment.

## V. CONCLUSION

- 14 -

The judgment of the Sullivan County Circuit Court is affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Mary Causby Jackson, as Administratrix of the Estate of Samara Elizabeth Jackson, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
